```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILE
DOC #: _____
DATE FILED: February 8, 2016
```

------------------------------------------------------------x
:
W.W. and D.C., on behalf of M.C., a minor child, :
:
                *Plaintiffs*, :
:
       -*against*- :    14 Civ. 9495 (PAC)
:
THE NEW YORK CITY DEPARTMENT OF EDUCATION, :
:    **OPINION & ORDER**
                *Defendant*. :
:
:
------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs W.W. and D.C. bring this action on behalf of their son, M.C., against the New York City Department of Education (DOE), under the Individuals with Disabilities Education Act (IDEA), alleging that DOE failed to provide M.C. a free appropriate public education (FAPE). They seek full tuition reimbursement for private school that M.C. attended during the 2013–2014 school year. The parties cross-moved for summary judgment. The Court grants summary judgment for the plaintiffs.

## BACKGROUND

**I.    Statutory and Regulatory Framework**

Under the IDEA, states receiving federal funds must provide all learning-disabled children with special-education services that are "tailored to the[ir] unique needs" and "reasonably calculated to enable the[m] to receive educational benefits." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 238–39 (2d Cir. 2015) (per curiam) (quoting *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014)). To that end, a school district must create an

1

individualized education program (IEP) for each qualifying child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements . . . and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* at 239 (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)). In New York, IEPs are developed by local Committees on Special Education (CES), which comprise members appointed by the local school district's board of education and must include the student's parent(s), a regular or special education teacher, a school-board representative, a parent representative, and others. *Id.* (citing *R.E.*, 694 F.3d at 175).

Parents who believe that their child is not being provided a FAPE may unilaterally enroll their child in a private school and seek tuition reimbursement from the school district. *Id.* In New York City, parents seek reimbursement by filing a due-process complaint with DOE, which refers the matter to an independent hearing officer (IHO) for a hearing. *Id.* At the hearing, the IHO employs the familiar burden-shifting framework known as the *Burlington/Carter* test. *See id.* Under that framework, DOE has the initial burden of establishing the procedural and substantive adequacy of the IEP; failure to do so entitles the parent to reimbursement if they demonstrate "the appropriateness of their private placement," and "that the equities favor them." *Id.* (quoting *R.E.*, 694 F.3d at 184). On the basis of the hearing and any evidence adduced by the parties, the IHO makes findings of fact and renders a decision. *Id.* An aggrieved party may appeal the decision to a state review officer (SRO), who conducts an independent review of the record and may affirm, reverse, or modify the IHO's decision. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379–80 (2d Cir. 2003). The SRO's decision may be challenged in a civil action in state or federal court. *M.O.*, 793 F.3d at 239 (citing 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009)

("[W]hen a public school fails to provide a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the district to reimburse the parents for the cost of the private education.").

## II.     Facts

M.C., who was 10 years old in February 2013, has been classified by DOE as a student with a speech and language impairment. DOE Exh. 6 at 1, 3, 15 [hereinafter IEP]; Tr. 144–46.[1] He has received diagnoses of Attention Deficit Hyperactivity Disorder, a learning disorder, and an anxiety disorder. IEP at 1–3; Tr. 144–46. Until the 2012–2013 school year, M.C. attended DOE public schools, where he had been placed in an integrated co-teaching (ICT) class since the second grade.[2] Tr. 63–64. Plaintiffs enrolled M.C. at the Stephen Gaynor School (SGS), a private school, for the 2012–2013 school year. *Id.*[3] On February 8, 2013, a CSE "convened to develop a program and IEP for M.C. for the 2013–2014 school year." IEP at 17; Tr. 93–95. The CSE drafted an IEP recommending that M.C. be placed in a 12:1 class for English language arts, social studies, and sciences,[4] and an ICT class for mathematics, art, music, and physical education. IEP at 10, 14. On July 24, 2013, DOE issued a "Final Notice of Recommendation," offering placement at the Simon Baruch School (M104), a DOE school. DOE Exh. 7.

---

[1] All citations for statements of fact are to the Certified Administrative Record, which includes the decisions of the IHO and SRO, transcripts of proceedings, plaintiffs' due-process complaint, DOE's verified petition to the SRO, the parties' moving papers and exhibits, and correspondence.

[2] In an ICT class, students with disabilities learn alongside students who do not have learning disabilities or special needs in a setting that must include a special-education teacher and a general-education teacher. *See* N.Y. Codes R. & Regs. tit. 8, § 200.6(g); Tr. 64.

[3] In this action, plaintiffs seek reimbursement only for the 2013–2014 school year. Compl. at 21.

[4] "12:1 class" describes a class with a ratio of 12 students to one special-education teacher. *See J.D. on behalf of A.P. v. New York City Dep't of Educ.*, No. 14 Civ. 9424 (ER), 2015 WL 7288647, at *4 (S.D.N.Y. Nov. 17, 2015).

3

On August 5, 2013, W.W. wrote the CSE to raise concerns regarding the recommended placement. Parents Exh. B. She informed the CSE that she did not feel that the program would offer M.C. adequate support and that he needed a small special-education school to progress and stated that she was therefore "unable to accept the IEP and program offered to [M.C.]." *Id.* Because it was summer and school was not in session, W.W. could not visit the proposed placement at that time, but she asked the CSE to provide additional information about the program and affirmed her intention to visit M104 when classes resumed. *Id.* In the meantime, she indicated that M.C. would start the year at SGS. *Id.* The letter concluded: "If no appropriate IEP and program are offered, I will have no choice[] but to have [M.C.] remain at [SGS] and I will seek reimbursement for this program and placement." *Id.*

On September 9, 2013, W.W. visited M104, where the school's parent coordinator told her that M104 "cannot offer both the ICT and 12:1 to [M.C.] as it would be too disruptive." Parents Exh. C at 1. W.W. was not allowed to visit classes at that time because she had not made an appointment. *Id.* On September 17, W.W. returned to M104 for an appointment to visit classrooms. *Id.* During her visit, W.W. saw both an ICT class and a 12:1 class. *Id.* The ICT class she saw was for high-functioning children, and she was told that the school's other ICT class was for children with behavioral issues. *Id.* W.W. considered both ICT classes to be inappropriate for M.C., who was not high functioning and who was easily distracted by other children's bad behavior. *See id.* W.W. was also told that M.C. would be "mainstreamed" for art, music, and physical education, even though the IEP recommended that M.C. receive ICT class instruction for these subjects. *Id.* at 2. W.W. also noted that the teacher of the 12:1 class was not certified to teach children with speech and language impairments, and the students in the class had more significant delays than M.C. *Id.*

4

The next day, W.W. again wrote the CSE. *Id.* at 1. She recounted her experience at M104, including that the parent coordinator had told her that M.C. could not attend both ICT and 12:1 classes, and that she was told he would not be placed in an ICT class for art, music, and physical education. *Id.* Based on her observations, W.W. informed the CSE that "the school cannot meet the mandated on the IEP [sic]." *Id.* The letter concluded: "Since no appropriate IEP or placement was offered, [M.C.] will remain at [SGS] and I will seek reimbursement for this program." *Id.*

## III.   Proceedings

On October 8, 2013, plaintiffs filed a due-process complaint with the school district, alleging procedural inadequacies in the development of M.C.'s IEP, challenging the substantive adequacy of the IEP, and challenging the adequacy of DOE's proposed placement, M104. DOE Exh. 1 at 1–2. A hearing on the merits was held. *See* Hearing Officer's Findings of Fact and Decision [hereinafter IHO Decision] at 2. And IHO Dora Lassinger issued a decision awarding tuition reimbursement to plaintiffs. *Id.* at 10. As to plaintiffs' procedural challenge to the IEP, the IHO determined that although the CSE was "not duly constituted" (because it lacked a general-education teacher), that error did not deny M.C. a FAPE. *Id* at 8. The IHO further found that the IEP's substantive goals and recommended program were appropriate. *Id.* at 8–9. Turning to the complaint's challenge to M.C.'s placement at M104, the IHO determined that because the school district had not presented any evidence that M104 was capable of implementing M.C.'s IEP, DOE had failed to carry its burden on the first requirement of the *Burlington/Carter* test. *See id.* at 9 ("The parent's testimony that the school did not recognize the combination program recommended for [M.C.]; that ICT classes did not exist for specials (as recommended in the IEP)[;] and that [M.C.] would not be appropriately grouped in the recommended classes was not

contradicted by any DOE witnesses."). The IHO thus concluded that DOE had denied M.C. a FAPE. *See id.* at 9. As for the other prongs of the *Burlington/Carter* test, the IHO determined that M.C. was appropriately placed at SGS and that equitable considerations weighed in plaintiffs' favor. *See id.* at 9–10. The IHO thus ordered DOE to reimburse plaintiffs $40,100 in tuition paid to SGS. *Id.* at 10.

DOE appealed the IHO's finding that the DOE had failed to offer M.C. a FAPE, arguing that the IHO erred as a matter of law when it placed the burden on DOE to demonstrate that M104 was capable of implementing M.C.'s IEP. *See* Verified Petition, ¶¶ 32–33; Decision No. 14-091 of the State Review Officer [hereinafter SRO Decision] at 8–9. Plaintiffs did not cross-appeal the IHO's adverse determinations that (1) the procedural violation arising from the absence of a general-education teacher on the CSE did not rise to the level of a FAPE; (2) that the IEP's goals were adequate; or (3) that the IEP was appropriate. *Id.* at 8. The appeal was thus limited to "whether the IHO erred in her determination that the district failed to offer the student a FAPE because it did not demonstrate that it could have implemented the student's IEP at the assigned public school site." *Id.*

SRO Justyn P. Bates ruled in favor of DOE, holding that because M.C. never attended M104, plaintiffs' due-process complaint was speculative and thus did not oblige DOE to present evidence to refute their claims:

> Here, the parents rejected the assigned public school site that the student would have attended and instead chose to enroll the student in a nonpublic school of their choosing. Therefore, the district is correct that the issues raised and the arguments asserted by the parents with respect to the assigned public school site are speculative. Furthermore, in a case in which a student has been unilaterally placed prior to the implementation of an IEP, it would be inequitable to allow the parents to acquire and rely on information that post-dates the relevant CSE meeting and IEP and then use such information against a district in an impartial hearing while at the same time confining a school district's case to describing a snapshot of the special education services set forth in an IEP. Based on the foregoing, the district

6

>was not obligated to present retrospective evidence at the impartial hearing regarding the execution of the student's program or to refute the parents' claims. Accordingly, the parents cannot prevail on their claims that the assigned public school site would not have properly implemented the February 2013 IEP.

*Id.* at 9–10 (citing, *inter alia*, *R.E.*, 694 F.3d at 186). The SRO thus modified the IHO's decision "by reversing those portions which determined that the district failed to offer the student a FAPE" and reversed the IHO's order for reimbursement. *Id.* at 11.

Plaintiffs thereafter timely filed this action challenging the SRO's decision. *See* 20 U.S.C. § 1415(i)(2)(A).

## STANDARD OF JUDICIAL REVIEW

"The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112–13 (2d Cir. 2007)). Although the standard of review on a motion for summary judgment "requires a more critical appraisal of the agency determination than clear-error review," it "nevertheless falls well short of complete de novo review." *Id.* (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012)). While the Court must "base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." *M.O.*, 793 F.3d at 243 (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). As such, "determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." *M.H.*, 685 F.3d at 244.

Where the IHO and SRO disagree, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the

evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *Id.* at 246. The degree of deference this courts afford the SRO's and IHO's decisions "hinge[s] on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.* at 244.

## DISCUSSION

The SRO reversed the IHO because—in his view of the then-applicable caselaw—DOE was not obliged to present any evidence to rebut plaintiffs' claim that M104 did not have the capacity to implement M.C.'s IEP. After the SRO issued his decision, however, the Second Circuit clarified that DOE bears the burden of showing that the proposed placement school is capable of implementing the student's IEP. As such, the SRO's legally erroneous decision is due no deference. Deferring instead to the IHO's undisturbed findings, the Court determines that (1) DOE failed to carry its burden that M104 was capable of providing M.C. a FAPE in conformity with his IEP; (2) SGS was an appropriate private placement; and (3) the equities favored plaintiffs. The Court thus concludes that plaintiffs are entitled to a tuition reimbursement for the 2013–2014 school year.

**I.  Recent Developments in the Caselaw**

A due-process complaint may challenge "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A). Here, plaintiffs challenge the adequacy of their son's educational placement, having never enrolled him in the recommended placement school. *See* SRO Decision at 9. Whether, and to what extent, such a challenge is permissible has been the

subject of several recent developments in this Circuit's caselaw, which provide the foundation for today's decision.

### a. *R.E.* limits the use of retrospective and speculative testimony in due-process hearings.

In *R.E. v. N.Y.C. Dep't of Educ.*, the Second Circuit addressed whether DOE could present "retrospective testimony"—that is, "testimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement"—to show that DOE had provided a child a FAPE. 694 F.3d at 185. In each of the three consolidated cases before the court in *R.E.*, DOE "offered retrospective testimony at the IHO hearing to overcome deficiencies in the IEP, and the SRO relied on this retrospective testimony in varying degrees to find that [DOE] had provided a FAPE." *Id.* The court rejected this use of retrospective testimony, holding instead that an "IEP must be evaluated prospectively as of the time of its drafting." *Id.* at 186. Accordingly, the court held that "retrospective testimony that the school district would have provided additional services beyond those listed in the IEP may not be considered in a *Burlington/Carter* proceeding." *Id.*[5] In other words, the IEP must stand on its own to meet procedural and substantive requirements.

The court then turned to the three cases before it. In the first, *R.E. and M.E.*, the court determined that although the SRO had improperly relied on retrospective testimony to evaluate both the substantive and procedural adequacy of the IEP, its reliance was harmless. *See id.* at 192–93. In the second, *R.K.*, the court overturned the decision of the SRO because the SRO improperly relied upon retrospective testimony and the SRO's decision was "contrary to the

---

[5] *R.E.*'s proscription of retrospective testimony was not absolute; rather, the court permitted DOE to present retrospective testimony so long as it merely "explains or justifies the services listed in the IEP" without "materially alter[ing] the written plan." *R.E.*, 694 F.3d at 186.

overwhelming weight of the evidence." *Id.* at 194. In the third, *E.Z.-L.*, the court rejected the parents' challenge to the substantive adequacy of their child's IEP on the basis that it was too speculative:

> Unlike the other two cases before us, E.Z.-L.'s parents do not seriously challenge the substance of the IEP. Instead, they argue that the written IEP would not have been effectively implemented at [the recommended placement school] because "defendant's own internal documents show that a large percentage of students at [the school] have been and continue to be 'underserved' for related services, particularly as to occupational therapy." Our evaluation must focus on the written plan offered to the parents, however. Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement. A suggestion that some students are underserved cannot overcome the "particularly important" deference that we afford the SRO's assessment of the plan's substantive adequacy. An IEP need only be reasonably calculated to provide likely progress, and after reviewing the record, we conclude that the SRO had ample evidence to find that the IEP met this standard.

*Id.* at 195 (citations omitted). As for the parents' procedural challenge, the court held that although the SRO had improperly relied on retrospective testimony, the error had not denied the child a FAPE. *See id.*

### b.   Courts split on whether *R.E.* permits parents to prospectively challenge their child's educational placement.

While *R.E.* concerned the use of retrospective testimony by DOE to support a finding that it provided a child a FAPE, the court's rejection of E.Z.-L.'s substantive challenge introduced doubt about whether parents could prospectively challenge their child's educational placement without first enrolling the child in the recommended placement school. DOE argued that *R.E.* foreclosed all such prospective challenges on the basis that they are inherently speculative.[6] The argument found some acceptance. *See, e.g.*, *E.E. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 6709, 2014 WL 4332092, at *10 (S.D.N.Y. Aug. 21, 2014) (rejecting prospective challenge as

---

[6] Indeed, that is the position DOE took before the SRO below and argued in its moving papers here. *See* Verified Petition, ¶¶ 32–33; Dkt. 18 at 19–22.

"impermissibly speculative and premature"); *P.S. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 4772, 2014 WL 3673603, at *13 (S.D.N.Y. July 24, 2014) (holding that "the SRO correctly concluded that a challenge to the DOE's choice of school is improper where the student never attended the school"). But most courts did not adopt this hardline approach. Instead, the majority of judges in this District interpreted *R.E.* to permit prospective challenges where the proposed placement was factually incapable of implementing the IEP. *See K.R. v. N.Y.C. Dep't of Educ.*, 107 F. Supp. 3d 295, 301–02 (S.D.N.Y. 2015) ("All courts appear to agree that a challenge to a proposed placement will be successful where the evidence establishes that the placement would be unable to satisfy the IEP's requirements."); *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 444 (S.D.N.Y. 2014) (finding a substantive violation where the staff at a proposed placement informed the parent that her child would be enrolled in a class with a 6:1:1 ratio instead of the 12:1:1 ratio required by the child's IEP); *see also J.C. ex rel. C.C. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 3759, 2015 WL 1499389, at *24 (S.D.N.Y. March 31, 2015) ("If the assigned school cannot meet the requirements of the IEP, then 'the Department has by definition failed to deliver a FAPE.'") (quoting *D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 950 F. Supp. 2d 494, 509 (S.D.N.Y. 2013)). That approach makes sense. An appropriate IEP, without the means to accomplish it, would be a hollow promise indeed.

Adoption of that position, however, does not end the inquiry but leads to the next issue: which party bears the burden of proving that the proposed placement could (or could not) implement a child's IEP? Some decisions have placed the burden on the parents. *See, e.g.*, *N.S. v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 7819, 2014 WL 2722967, at *13 (S.D.N.Y. June 16, 2014) ("Although the school district bears the burden of proof during the first stage of a *Burlington/Carter* inquiry, it discharges its duty by establishing that a student's IEP is

substantively and procedurally adequate."); *J.W. v. New York City Dep't of Educ.*, 95 F. Supp. 3d 592, 603 (S.D.N.Y. 2015) ("[T]he burden is on the parents 'to establish that the school district would not have adhered to the written plan.'" (quoting *N.S.*, 2014 WL 2722967, at *2)). Other decisions required the school district to establish that the proposed placement was capable of implementing the IEP. *See, e.g.*, *B.R. ex rel. K.O.*, 910 F. Supp. 2d 670, 678 (S.D.N.Y. 2012) (reversing an SRO decision for "implicitly revers[ing] the burden on the *school district* to prove that the proposed placement was adequate").

        c.        ***M.O.* clarifies that parents may prospectively challenge the recommended placement school's capacity to implement their child's IEP and strongly suggests that the burden is on the school district.**

On July 15, 2015, a week after briefing for the instant cross-motions for summary judgment concluded, the Second Circuit decided another IDEA case on this expanding, but still opaque, subject-matter area.

In *M.O. v. N.Y.C. Dep't of Educ.*, plaintiffs unilaterally enrolled their son, D.O., in private school without first enrolling him in the district's proposed placement school. 793 F.3d at 240–41. They sought a tuition reimbursement, which the IHO denied. *Id.* at 241–42. The SRO affirmed, and the district court upheld the SRO's decision. *Id.* at 242–43. Both the SRO and the district court interpreted *R.E.* to bar prospective challenges and thus did not require the school district to present any evidence that the proposed placement could implement D.O.'s IEP. *See id.* at 242–43, 245. The Second Circuit affirmed, but rejected the SRO's and the district court's analysis. *Id.* (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014). First, the court clarified that "*R.E.* does not foreclose all prospective challenges to a proposed placement school's capacity to implement a child's IEP." *Id.* at 244 (citing *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009), for the proposition that "[s]chool districts do not

have 'carte blanche' to assign a child to a school 'that cannot satisfy the IEP's requirements'"). Rather, *R.E.* "stands for the unremarkable proposition that challenges to a school district's proposed placement school must be evaluated prospectively (i.e., at 'the time of the parents' placement decision') and cannot be based on mere speculation." *Id.* (quoting *R.E.*, 694 F.3d at 195). Although all prospective challenges require courts to consider what would have happened had the child attended the proposed placement school (an inherently speculative endeavor), the court drew a distinction between conclusory claims that the school simply *would not* implement an IEP and claims that the school *could not* implement an IEP: "While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *Id.* (citing *R.E.*, 694 F.3d at 195).

The parents' challenges in *M.O.*, however, "were not of the type permitted under *R.E.*—prospective challenges to [the proposed placement school's] capacity to provide the services mandated by the IEP." *Id.* at 245. "They were, instead, substantive attacks on D.O.'s IEP that were couched as [prospective] challenges . . . ." *Id.* Such substantive challenges are not permitted under *R.E.* "[b]ecause the substantive adequacy of the IEP must be determined by reference to the written IEP itself"—not on the basis of extrinsic evidence. *Id.* (citing *R.E.*, 694 F.3d at 195). As such, the court held that "the school district did not have the burden to produce evidence demonstrating [the proposed placement school's] adequacy" in response to plaintiff's veiled substantive challenges. *Id.* (citation omitted).

Finally, the court noted that its reasoning differed from that of the SRO and the district court:

> Although the SRO and district court appear to have concluded that the school district was not required to produce evidence on the adequacy of [the proposed

13

>placement school], based on an erroneous determination that [*R.E.*] requires a child physically to attend a proposed placement school before challenging that school's ability to implement the child's IEP, "we are entitled to affirm the judgment on any basis that is supported by the record."

*Id.* (quoting *Crawford*, 758 F.3d at 482). Accordingly, the court affirmed the district court's ultimate holdings that "(1) the school district was not required to present evidence regarding the adequacy of [the proposed placement school] at the impartial hearing, and (2) the school district provided D.O. a FAPE." *Id.* at 246.

## II.   Legal Standard

*M.O.* leads to two conclusions. First, plaintiffs may prospectively challenge a proposed placement school's capacity to implement an IEP without first enrolling their child in that school. *See id.* at 244. Indeed, any other rule would be too harsh and potentially harmful to the child. Second, the school district bears the burden of showing that the proposed placement school has the capacity to implement the child's IEP. *See id.* at 245. The Court notes that this is not an explicit holding but rather a necessary inference.[7] And the Second Circuit has since so stated in an unpublished summary order. *See B.P. v. N.Y.C. Dep't of Educ.*, ___ Fed. App'x ___, 2015 WL 9487873, at *2 (2d Cir. 2015) (unpublished) (describing *M.O.* as "recognizing that school district must produce evidence as to adequacy of placement school when confronted with permissible prospective challenge"). Moreover, the Court's interpretation of *M.O.* is not inconsistent with *R.E.*'s requirement that plaintiffs base their challenge on nonspeculative evidence that was available at the time the parents decided to enroll their child in public school.

---

[7] The panel held that the school district was *not* required to present evidence regarding the adequacy of the proposed placement school at the impartial hearing because plaintiffs had *not* raised a prospective challenge to the school's capacity to implement the IEP. *See M.O.*, 793 F.3d at 245–46. Where plaintiffs *do* raise a prospective challenge, however, the school district bears the burden of showing that its proposed placement is capable of implementing the IEP. This burden is connected with the school district's existing burden to demonstrate the procedural and substantive appropriateness of the IEP.

14

*See M.O.*, 793 F.3d at 244 (citing *R.E.*, 694 F.3d at 195). Such evidence may be used to rebut the school district's evidence, but that evidence is not required to raise a prospective challenge in a due-process complaint.[8]

### III. Analysis

#### a. The SRO's decision is legally erroneous and thus due no deference.

The SRO held that because "the parents rejected the assigned public school site that the student would have attended and instead chose to enroll the student in a nonpublic school of their choosing . . . the issues raised and the arguments asserted by the parents with respect to the assigned public school site [were] speculative," and DOE was therefore "not obligated to present retrospective evidence at the impartial hearing regarding the execution of the student's program or to refute the parents' claims." SRO Decision at 9–10 (citing, *inter alia*, *R.E.*, 694 F.3d at 184).[9] This broad interpretation of *R.E.*, though not foreclosed at the time the SRO rendered his decision, was rejected by the Second Circuit in *M.O*. *See* 793 F.3d at 244–45. Accordingly, the SRO's opinion—which turned on a purely legal determination and was not based on any educational expertise or independent factual findings—is legally erroneous and due no deference. *Cf. B.R. ex rel. K.O.*, 910 F. Supp. 2d 670, 678 (S.D.N.Y. 2012).

#### b. Plaintiffs' prospective challenge to M104's capacity to implement M.C.'s IEP is permissible under *R.E.* and *M.O.*

Plaintiffs' due-process complaint challenged M104's capacity to implement M.C.'s IEP. Plaintiffs alleged and presented evidence that M104 could not offer M.C. both ICT and 12:1 classes, as required by his IEP. *See* Parents Exh. C at 1; DOE Exh. 1 at 1. Similarly, plaintiffs

---

[8] In this regard, the Court notes that *Burlington/Carter* framework does not impose a plausibility pleading standard but rather puts the burden squarely on the government at this stage of the inquiry.

[9] This legal determination is the sole basis of the SRO's decision. He made no factual findings of his own, nor did he disturb any of the IHO's factual findings.

alleged and presented evidence that M.C. would be enrolled in general-education classes for art, music, and physical education, even though his IEP recommended that he receive ICT class instruction for these subjects. *See* Parents Exh. C at 2; DOE Exh. 1 at 2. Those allegations are not mere speculation that M104 would "simply fail to adhere to [the IEP's] mandates." *M.O.*, 793 F.3d at 244. Instead, they are based on statements that the school could not offer both ICT and 12:1 classes, but rather one or the other. As such, plaintiffs' prospective challenge to DOE's proposed placement is "of the type permitted under *R.E.* [and *M.O.*]"—a "prospective challenge[] to [M104's] capacity to provide the services mandated by the IEP." *Id.* And since plaintiffs asserted a valid prospective challenge, DOE bore the burden of showing that M104 could provide M.C. a FAPE in conformity with his IEP. *Cf. id* at 245.

      c.      **The Court defers to the IHO's well-reasoned determinations that DOE denied M.C. a FAPE, SGS was an appropriate placement, and the equities favored plaintiffs.**

Having rejected the SRO's legally erroneous decision and concluded that plaintiffs have stated a permissible prospective challenge, the Court defers to the IHO's better-reasoned decision, determining that (1) DOE denied M.C. and FAPE; (2) SGS was an appropriate placement; and (3) the equities favored plaintiffs. *See R.E.*, 694 F.3d at 189 ("[A] court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead.").

First, the IHO found that DOE failed to carry its burden to show that M104 could provide M.C. a FAPE in conformity with his IEP. IHO Decision at 9. That determination is supported by the record. DOE adduced no evidence whatsoever that M104 was capable of implementing

16

M.C.'s IEP. IHO Decision at 9.[10] Nor did DOE contradict W.W.'s letter in which she related that M104's parent coordinator told her that the school would not and could not implement M.C.'s IEP. The Court distinguishes *B.P.*, the nonprecedential summary order relied upon by DOE at oral argument. In *B.P.*, parents were given false information that the school would be incapable of implementing their child's IEP during their tour of the placement school. 2015 WL 9487873, at *1–2. They argued that DOE should be estopped from remedying that misinformation by adducing contrary evidence at the due-process hearing (which took place after they had enrolled their child in a private school and paid tuition). *Id.* at *2. The court disagreed: "[I]nsofar as plaintiffs relied on information from a single school official, they bore the risk that the school district would, in fact, satisfy its burden of proving the appropriateness of the challenged placement." *Id.* The obvious distinction between *B.P.* and this case is that here DOE never contradicted the information given to W.W. when she visited M104.

Second, the IHO concluded that SGS is an appropriate placement. *Id.* at 9–10. DOE never contested this finding. *See generally* Verified Petition; *see* SRO Decision at 8; Dkt. 18 at 29. And the record supports it. SGS is a private school exclusively for students with disabilities, and M.C. was placed in a class with a total of 11 students, one head teacher, and one assistant teacher. Tr. 20–21.

Finally, the record supports the IHO's determination that the equities favor plaintiffs. Throughout this process, plaintiffs cooperated fully with DOE to ensure that their child received a FAPE. *See Bettinger v. N.Y.C. Bd. of Educ.*, No. 06 Civ. 6889, 2007 WL 4208560, at *6 (S.D.N.Y. Nov. 20, 2007). W.W. participated in the CSE review, went to M104 on two

---

[10] The only documents DOE submitted to the IHO were the due-process complaint, several evaluations of M.C., the IEP, and the final notice of recommendation. *See* DOE Exhh. 1–7.

occasions, and diligently communicated her concerns with the CSE. *See* IEP at 16; Parents Exh. C at 1–2. Moreover, the tuition charged is reasonable, taking into account the specialized nature of the instruction provided. *See* IHO Decision at 10.

*   *   *

According due deference to the well-reasoned decision of the IHO, the Court finds (1) DOE failed to provide M.C. with a FAPE for the 2013–2014 school year because it failed to show M104 could implement his concededly appropriate IEP; (2) SGS was an appropriate placement; and (3) the equities favor plaintiffs. Accordingly, plaintiffs are entitled to tuition reimbursement for the 2013–2014 school year.

## CONCLUSION

The Court GRANTS summary judgment in plaintiffs' favor and DENIES DOE's cross-motion. The Clerk is directed to enter judgment in plaintiffs' favor in the amount of $40,100 plus reasonable attorney's fees and costs.

Dated: New York, New York
February 8, 2016

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge